UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KAREN SARAGUSA                                    CIVIL ACTION

VERSUS                                            NO. 14-2717

COUNTRYWIDE, ET AL.                               SECTION: R (1)

## ORDER AND REASONS

Defendants Countrywide Home Loans, Inc. and Bank of America,[1] defendant Seterus, Inc.,[2] and defendant Green Tree Home Lending, LLC,[3] move the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff Karen Saragusa's first amended complaint for failure to state a claim.[4]  For the following reasons, the Court grants the motions.[5]

---

[1]    R. Doc. 31.

[2]    R. Doc. 43.

[3]    R. Doc. 45.

[4]    Saragusa's original complaint, asserting various state-law claims, named only Countrywide and Bank of America as defendants. R. Doc. 1. After Countrywide and Bank of America moved to dismiss that complaint, Saragusa filed her first amended complaint, asserting various federal-law claims. R. Doc. 20.  In the first amended complaint, Saragusa appears to have abandoned her state-law claims. *See id.* at 22-37.  Regardless, Saragusa's original allegations of fraud, misrepresentation, and unfair trade practices under Louisiana law, fail to state a claim as a matter of law.  *See* La. Rev. Stat. § 6:1122; *Jesco Const. Corp. v. Nationsbank Corp.*, 830 So. 2d 989, 990 (La. 2002) ("[T]he Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery.").

[5]    The Court notes that, at the time of filing her opposition to defendants' motions to dismiss, Saragusa was proceeding pro se.  The Court will therefore liberally construe Saragusa's opposition brief.  *See Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).  At the time Saragusa filed her complaint, however, she was represented by counsel.  *See* R. Doc. 20 at 39.  Accordingly, the Court need not liberally construe the allegations in Saragusa's complaint.

## I.     BACKGROUND

The Court summarizes the rambling and confusing allegations in Saragusa's original and first amended complaint as follows.

Saragusa's financial troubles began after Hurricane Katrina in 2005. At that time, Saragusa maintained a home mortgage loan with defendant Countrywide. Countrywide allegedly modified her loan sometime in 2008 as a result of Saragusa's inability to pay.[6] Countrywide did not complete the loan modification process to Saragusa's satisfaction. From 2007 to 2010, Saragusa and Countrywide communicated numerous times regarding her purported loan modification.[7]

In October 2012, the sheriff's office notified Saragusa that Bank of America would seize her home.[8] After resolving this brief scare, Saragusa continued to communicate with Bank of America regarding her home loan from 2012 through 2015.[9] According to Saragusa, Bank of America modified her home loan in 2014, imposing more expensive monthly payments than she could afford.[10] Saragusa frequently spoke with Edward Dixon in Bank of America's "Customer Care" Department leading up to and following this

---

[6]     R. Doc. 1 at 2, 16-18.

[7]     *Id.* at 6-7, 16-70.

[8]     *Id.* at 7, 82. Though Saragusa does not fully explain this point, but it appears from her complaints that Bank of America purchased Countrywide and assumed Saragusa's existing home loan.

[9]     *See generally id.* at 83-99.

[10]    *Id.* at 8.

loan modification.[11] On November 24, 2014, Saragusa received a "Final Notice" regarding her home loan payments.[12] Saragusa refused to pay Bank of America again until she spoke with her attorney.[13]

After several unsatisfactory communications with Bank of America and her filing this lawsuit against Countrywide and Bank of America, Saragusa told Dixon on December 4, 2014, that all future communication regarding her loan should be directed to her attorney.[14] Dixon called Saragusa twice after December 4, and on December 9, 2014, Saragusa again notified Dixon to communicate with her attorney.[15] Dixon and two other Bank of America employees ("Patrick" and "Frank") continued to call Saragusa after December 9.[16]

On April 1, 2015, Bank of America transferred Saragusa's unpaid loan amounts to defendant Seterus, Inc. In a letter dated April 23, 2015, Seterus notified Saragusa that it was her new loan servicer and debt collector and that Saragusa's loan had a balance of $146,370.41.[17] Seterus tried to communicate with Saragusa by letter and telephone

---

[11] *Id.* at 8-9, 99-107.

[12] *Id.* at 105.

[13] *Id.* at 106.

[14] R. Doc. 20 at 7 ¶¶ 16-19.

[15] *Id.* at ¶¶20-22.

[16] *Id.* at 8-10.

[17] *Id.* at 12 ¶¶ 56-58.

during April and May 2015.[18] On May 25, 2015, Saragusa amended her complaint in this Court to add Seterus, Inc. and Green Tree Home Lending, LLC, as defendants.[19] Saragusa's amended complaint asserts the following claims:

- Count I – a Telephone Consumer Protection Act claim against Bank of America;[20]

- Count II – a Fair Debt Collection Practices Act claim against Bank of America;[21]

- Count III – a Louisiana Consumer Credit Law claim, arising under La. Rev. Stat. 9:3562, against Bank of America, Green Tree, and Seterus;[22]

- Count IV – a conspiracy claim against Countrywide, Bank of America, Green Tree, and Seterus;[23] and

- Count V – an Americans with Disabilities Act claim, a Home Mortgage Disclosure Act claim, a Community Reinvestment Act claim, an Equal Credit Opportunity Act claim, and a Fair Housing Act claim against Bank of America, Green Tree, and Seterus.[24]

---

[18]   *Id.* at 12-15.

[19]   *See generally id.*

[20]   *Id.* at 22-23.

[21]   *Id.* at 23-25.

[22]   *Id.* at 26-28.  Saragusa refers to Louisiana Revised Statute § 9:3562 as the "Louisiana Fair Debt Collection Statute."  For the sake of clarity, the Court will refer to this provision by the chapter title of Louisiana's Revised Statutes under which section 9:3562 is nested—Louisiana Consumer Credit Law.

[23]   *Id.* at 27-32.

[24]   *Id.* at 32-34.

Defendants Countrywide, Bank of America, Seterus, and Green Tree all move to dismiss Saragusa's first amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[25]  Saragusa opposes the motion.[26]

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent

---

[25]  R. Docs. 31, 43, 45.

[26]  R. Doc. 58.

from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Nevertheless, uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). The Court may also consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.   DISCUSSION

To begin, the Court notes that Saragusa fails to state a claim as a matter of law under the Home Mortgage Disclosure Act and the Community Reinvestment Act, which do not provide for private rights of action.[27] *See, e.g.*, *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992) ("The Community Reinvestment Act makes no

---

[27]   Saragusa seems to concede this point in her opposition brief. *See* R. Doc. 58 at 13-14.

provision for a civil private cause of action . . . ."); *Lee v. E\*Trade Fin. Corp.*, No. 6543, 2013 WL 4016220, at \*5 (S.D.N.Y. Aug. 6, 2013) ("The HDMA does not give individual plaintiffs a private right of action.").

Saragusa also fails to state a claim under the Equal Credit Opportunity Act. Saragusa alleges that defendants have discriminated against her only on the basis of her physical disability.[28] Physically disabled individuals are not a "protected class" under the Act, which prohibits discrimination on the basis of "race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691; *see also Nia Home Health Care, Inc. v. Whitney Nat'l Bank*, No. 97-1903, 1998 WL 171522, at \*4 (E.D. La. Apr. 9, 1998), *aff'd*, 204 F.3d 1115 (5th Cir. 1999) ("[T]o establish a *prima facie* case under the ECOA, plaintiff must demonstrate that . . . he or she is a member of a protected class . . . .").

In addition, other than referring to defendant Green Tree as a loan servicer or debt collection agency, Saragusa has not alleged any facts whatsoever involving Green Tree.[29] Saragusa has therefore wholly failed to state a claim, under any of her legal theories, against Green Tree. The Court addresses Saragusa's remaining claims in turn.

### A. The Telephone Consumer Protection Act Claim

In Count I, Saragusa alleges that Bank of America violated the Telephone Consumer Protection Act, 47 U.S.C. § 227. The TCPA aims to protect individual privacy by regulating certain undesirable telemarketing practices, including the use of

---

[28] R. Doc. 20 at 1-2, 32-33.

[29] *See id.* at 7-22 (section of the First Amended Complaint titled "Updated Chronology of Facts and Actions Taken by Defendants Including . . . Seterus and Green Tree Lending" lacks any reference to Green Tree).

unsolicited, automated phone calls.  *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1045 (7th Cir. 2013).  The Act provides:

> It shall be unlawful for any person . . .
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[; or]
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . .

47 U.S.C. § 227 (b)(1)(A)-(B).

Saragusa accuses Bank of America of calling her "several times per day and on back to back days" without her consent.  Under the Act, a person consents to receiving phone calls if she gives a company her number before the company calls her.  *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552 (6th Cir. 2015).  Moreover, under the Act, "a debtor does not need to give h[er] consent to automated calls specifically; h[er] general consent to being called . . . constitutes 'prior express consent.'"  *Id.*

Here, accepting her allegations as true, Saragusa consented to receiving many of the complained-of telephone calls regarding her loan modification efforts.  First, in connection with addressing her loan modifications, Saragusa provided defendants with her phone number on several occasions.[30]  Second, even after retaining an attorney, Saragusa authorized Countrywide and Bank of America to call her directly.[31]

---

[30]   *See, e.g.*, R. Doc. 1-3 at 10, 12, 33, 40, 52-53, 62, 64; R. Doc. 1-4 at 2, 41, 43, 52-55; R. Doc. 1-5 at 2, 4, 9, 42, 46, 48, 60; *see also* R. Doc. 31-1, Exhibit D.

[31]   *See* R. Doc. 20-2 at 2 (July 8, 2008 letter from attorney Cynthia De Luca) ("If you have any further questions or need to discuss this further please feel free to contact me or Karen Saragusa."); *Id.* at 3 (October 4, 2012 letter from attorney Daniel Abel)

Though Saragusa may have revoked her consent, she did not do so until December 2014, according to her own allegations. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013) (recognizing a consumer's ability to revoke her prior express consent). Saragusa alleges that on December 4, 2014, and again on December 9, she faxed Edward Dixon at Bank of America a letter requesting that all phone calls from the company be directed to her attorney.[32] Because Saragusa consented to receiving calls before December 4, none of those communications trigger liability under the TCPA.

Regarding the calls she received from Bank of America after December 4, 2014, Saragusa has not sufficiently alleged the other elements of a TCPA claim. In conclusory fashion, Saragusa alleges that Bank of America used an "automatic telephone dialing system" or an "artificial or prerecorded voice" to make the calls. First, mere recitation of the elements of a cause of action is insufficient to plausibly state a claim for relief. *See Iqbal*, 556 U.S. at 678. Beyond that, other allegations of Saragusa's complaint contradict this assertion.

The TCPA defines the "automatic telephone dialing system" as equipment capable of "stor[ing] or produc[ing] telephone numbers to be called, using a random or sequential number generator [and] dial[ing] such numbers." 47 U.S.C. § 227(a)(1)(A)-(B). Here, Saragusa's TCPA claim is premised on Bank of America "harassing" her about her outstanding debt. This harassment allegedly occurred on a few occasions in 2014 and 2015 after Saragusa had repeatedly communicated with and provided her contact

---

("[A]lthough I represent Ms. Saragusa, you may speak with her and she with you about these matters even when I am not on the phone with you both.").

[32] R. Doc. 20 at 7 ¶¶ 19, 22.

information to numerous Bank of America employees over the course of ten years. The Court cannot reasonably infer from these facts that Bank of America randomly generated Saragusa's cellular and home phone numbers with an automatic telephone dialing system, rather than deliberately dialed the numbers that she provided to the company.

Further, Saragusa alleges that after she told Dixon to direct all communication regarding her loan to her attorney, she continued to receive phone calls from Dixon, and two other people at Bank of America employees, Patrick and Frank. These real-time calls from people that Saragusa knows to be employees of Bank of America do not violate the TCPA's prohibition on using an "artificial or prerecorded voice." *See Ybarra v. Dish Network, LLC*, 807 F.3d 635, 640 (5th Cir. 2015) ("[A] defendant must make a call and an artificial or prerecorded voice must actually play."); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 322 (3d Cir. 2015) ("The Telephone Consumer Protection Act was intended to combat, among other things, the proliferation of *automated* telemarketing calls (known as 'robocalls') . . . ." (emphasis added)). Therefore, Saragusa has failed to state a claim under the TCPA.

### B.   The Fair Debt Collection Practices Act Claim

In Count II, Saragusa alleges that Bank of America violated the Fair Debt Collection Practices Act. The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" may make with a debtor. *See* 15 U.S.C. § 1692, *et seq.* To state a claim under the FDCPA, the plaintiff must allege that (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a "debt collector" as defined by the Act, and (3) the defendant has engaged in an act or omission prohibited by the Act. *See, e.g.*, *Alvarado v. Credit Prot. Ass'n, L.P.*, No. 8:14-cv-447-T-33TGW, 2015 WL 1815863, at *3

(M.D. Fla. Apr. 22, 2015).

As a bank attempting to collect the debt Saragusa owed directly to it, Bank of America is not a "debt collector" within the meaning of the Act. *See Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 724 (E.D. La. 2001) (collecting cases). Saragusa therefore fails to state a claim under the FDCPA.

### C. The Louisiana Consumer Credit Law (La. Rev. Stat. § 9:3562) and Conspiracy Claims

In Count III, Saragusa alleges that that Bank of America violated Louisiana Revised Statute § 9:3562 by "willfully communicating with Plaintiff with such frequency as can reasonably be expected to harass the Plaintiff [and] by attempting to enforce a debt when such person knows that the debt is not legitimate."[33] In addition, Saragusa alleges that Green Tree and Seterus "have also committed acts and omissions in violation of [Revised Statute section] 9:3562."[34]

Section 9:3562 provides that a creditor "shall not contact any person other than an extender of credit or credit reporting agency who is not living, residing, or present in the household of the debtor regarding the debtor's obligation to pay a debt." This statute prohibits creditors from communicating with *third-parties* about a debtor's obligation. *See* Manuel H. Newburger & Barbara M. Barron, Fair Debt Collection Practices: Federal and State Law and Regulation ¶19.06[4][a] (2013). Because Saragusa has not alleged that Bank of America, Green Tree, or Seterus unlawfully communicated with anyone but her, she fails to state a claim under Louisiana Revised Statute § 9:3562.

---

[33] R. Doc. 20 at 26.

[34] *Id.* at 28.

In Count IV, Saragusa also alleges that Bank of America, Countrywide, Green Tree, and Seterus have conspired to violate the Louisiana Consumer Credit Law and the Fair Debt Collection Practices Act. Because Saragusa has failed to state a claim for the alleged underlying violation of the Louisiana Consumer Credit Law or the Fair Debt Collection Practices Act, she has also failed to state a claim that defendants have conspired to violate those laws.

### D. The Fair Housing Act and Americans with Disabilities Act Claims

In Count V, Saragusa alleges that Bank of America, Green Tree, and Seterus violated the Fair Housing Act and the Americans with Disaibilities Act. The Fair Housing Act prohibits discrimination because of handicap in "residential real estate-related transactions," including "the making or purchasing of loans or providing other financial assistance." 42 U.S.C. § 3605; *see also Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir. 1996). To state a claim for relief under the Act, a plaintiff "must show proof of intentional discrimination . . . either through direct evidence or through circumstantial evidence using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012).

Under *McDonnell*'s burden-shifting test, the plaintiff must demonstrate that (1) she is a member of a protected class, (2) she attempted to engage in a "real-estate related transaction" with the defendants and met all relevant qualifications for doing so, (3) the defendants refused to engage in the real-estate related transaction despite the plaintiff's qualifications, and (4) the defendants continued to engage in that type of transaction with other parties outside of the plaintiff's class with similar qualifications. *See Molina v.*

*Aurora Loan Servs., LLC*, ___ F. App'x ___, 2015 WL 7753215, at *5 (11th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Although Saragusa alleges that a work-related injury has left her "totally disabled,"[35] she has not alleged sufficient facts from which the Court can reasonably infer that defendants modified Saragusa's loan to her dissatisfaction *because of* her disability. On the contrary, accepting Saragusa's allegations as true, it appears that employees of Bank of America attempted to work with Saragusa to secure more favorable financing for her during the pendency of her Social Security disability hearings.[36] In addition, Saragusa did not tell Bank of America that her disability made her new monthly loan amount unaffordable until after her modification had been finalized.[37] Further, Saragusa does not offer any information regarding the qualifications for the loan modification she was seeking, whether she met those qualifications, or whether defendants entered into loan modifications with other non-disabled people with similar qualifications to Saragusa. Therefore, Saragusa fails to state a claim for discrimination under the FHA.

Finally, Saragusa fails to state a claim against defendants under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* The ADA prohibits discrimination on the

---

[35] R. Doc. 20 at 2.

[36] *See, e.g.*, R. Doc. 1 at 96 ¶ 262 (Bank of America employee offering to follow up with Saragusa after she checked on her disability status); *id.* at 98 (Bank of America employee using a "letter from Disability Office" to "help with the [loan modification] process" and repeatedly calling Saragusa to update her on the status of her loan mofication); *id.* at 99-100 (Bank of America employee "checking in" with Saragusa while she awaited a disability determination); *id.* at 100 (Bank of America employee attempting to start a new loan modification based on recent Social Security Disability Award letter after earlier denial).

[37] R. Doc. 1 at 8-9.

basis of physical or mental disability by public or private employers, *see generally* § 12112; entities who administer public service benefits or programs, *see generally* § 12132; and entities who own, lease, or operate places of public accommodation, *see generally* § 12182, none of which applies here.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss Saragusa's first amendment complaint.

New Orleans, Louisiana, this 17th day of March, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE